In the

# United States Court of Appeals
## For the Seventh Circuit
_____

No. 24-1484

WISCONSIN CENTRAL LTD.,

*Petitioner,*

*v.*

SURFACE TRANSPORTATION BOARD and UNITED STATES OF AMERICA,

*Respondents,*

*and*

SOO LINE RAILROAD COMPANY,

*Intervening Respondent.*

_____

Petition for Review of a Decision of the
Surface Transportation Board.
Finance Docket No. 36397.

_____

ARGUED NOVEMBER 15, 2024 — DECIDED DECEMBER 11, 2024

_____

Before EASTERBROOK, ROVNER, and KIRSCH, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Wisconsin Central and Soo Line disagree about where to exchange rail traffic in the Chicago area. Wisconsin Central prefers Belt Railway's yard abutting Chicago, while Soo

Line prefers the Spaulding yard near Bartlett, about 35 miles to the northwest of Belt Railway's yard.

The Surface Transportation Board initially held that Wisconsin Central's choice is forbidden because it does not own Belt Railway outright—though its parent Canadian National Railway is one of six joint owners, and Wisconsin Central has a contractual right to use the yard. We remanded after concluding that the Board had misinterpreted 49 U.S.C. §10742, which permits a rail carrier to designate "reasonable" facilities "that are within its power to provide". We held that a railroad can have this power by contract as well as by ownership. *Wisconsin Central Ltd. v. Surface Transportation Board*, 20 F.4th 292 (7th Cir. 2021). Our opinion identified other potentially important questions, such as whether Belt Railway's facility (which the Board and parties call "Clearing Yard") is a "reasonable" place for the exchange. The Board then held that it is not, 2024 STB LEXIS 23 (Jan. 29, 2024), and Wisconsin Central again petitions for judicial review.

The Board thought the balance of convenience a wash. It recognized that there can be congestion at Clearing Yard but stated that exchanges at Spaulding also cause congestion and can force Wisconsin Central to move trains out of position. But it gave two principal reasons for its conclusion that exchange at Belt Railway, over Soo Line's objection, is not reasonable. First, it concluded that costs matter to reasonableness and found it unreasonable for Wisconsin Central to insist that Soo Line bear not only the costs of moving cars to Chicago but also the fees that Belt Railway charges for its services. Second, it stated that permitting a carrier such as Wisconsin Central to change locations unilaterally (exchanges had been occurring at Spaulding) would disrupt the process of negotiation and agreement. Why negotiate if the receiving carrier can run to the Board to obtain an involuntary location? The Board observed that much of the rail industry had filed

statements urging it to adopt a position that favors negotiation and agreement.

Our 2021 decision observes that "reasonable" is an open-ended term that confers discretion on the Board. 20 F.4th at 295. For its part, the Board remarked that, in normal usage, the word "reasonable" embraces considerations such as what is "fair, sensible, logical, ordinary or usual, and not too expensive." 2024 STB LEXIS at *9 (cleaned up). It found that rail carriers always consider costs when negotiating about places to exchange traffic and concluded that it should do the same in order to make a reasonable designation. This approach is within the scope of discretion conveyed by the word "reasonable"; indeed, any other approach would be *un*-reasonable.

Nonetheless, Wisconsin Central contends that the Board is forbidden to consider costs as part of reasonableness because of this passage in our 2021 opinion:

> If the parties cannot agree about where to exchange traffic, three distinct questions could require resolution: (1) may the receiving carrier ever designate a willing third party to receive traffic on its behalf?; (2) if yes, is the proposed location for interchange "reasonable" (another important word in §10742) compared with the place where switching otherwise would occur?; (3) if yes to both of these questions, who pays the third party? By mixing these up, and smuggling an assumption about the answer to Question 3 into its decision about Question 1, the Board erred.

20 F.4th at 294–95. Wisconsin Central maintains that our critique of the Board's original approach necessarily prohibits the consideration of costs as part of reasonableness. Yet our decision did not hold any such thing; the meaning of "reasonable" was not contested at the time. The Board's decision on remand shows convincingly that its understanding of "reasonable" is not the result of the same confusion that led to its initial decision.

Wisconsin Central has little to say about the Board's second reason—its desire to select exchange locations, whenever possible, through private negotiation rather than governmental mandate. That approach, too, is within the scope of discretion conferred by a word such as "reasonable."

At oral argument Wisconsin Central told us that the Board misunderstood the fact that Belt Railway's fees cover its costs of breaking and re-making trains, costs that Soo Line bears if switching occurs at Spaulding. Soo Line's marginal outlay under Wisconsin Central's approach therefore would be limited to the expense of moving cars to Chicago. This sounds like an assumption that Soo Line's switching costs are identical at Spaulding and Clearing Yard (something that the record may not show) followed by a contention that the Board's decision is not supported by substantial evidence. Yet this is not how the dispute was framed before the Board or in this court. Wisconsin Central's brief does not contain the phrase "substantial evidence," so this line of argument has not been preserved for decision.

The Board's decision is neither arbitrary nor capricious, and unlike its first decision does not embody a legal error. The petition for review is accordingly

DENIED.